08-0865-cr(L)
United States v. Shyne (Alexander)

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 5th day of August, two thousand and ten.

PRESENT:    AMALYA L. KEARSE,
            ROBERT D. SACK,
            PETER W. HALL,
                    *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

                    *Appellee,*

           v.                              No.[s]: 08-0865-cr(L), 08-1359-
                                           cr(CON), 08-1650-cr(CON)

DOUGLAS SHYNE, NAHAR SINGH, NATASHA SINGH, CHRISTINE RICHARDSON, NATHANIEL SHYNE, TOYBE BENNETT, EPHRAIM RICHARDSON, JASON WATLER, TIMOTHY MONTGOMERY, ANTHONY PRINCE, MARION JONES AND NARESH PITAMBAR,

                    *Defendants*,

NATHANIEL ALEXANDER, STEVEN RIDDICK AND ROBERTO MONTGOMERY,

                    *Defendants-Appellants.*

_____

1

For Defendant-Appellant Alexander:    Richard D. Willstatter, Green & Willstatter, White Plains, NY.

For Defendant-Appellant Riddick:    Marjorie M. Smith, Piermont, NY.

For Defendant-Appellant Montgomery:    Thomas H. Nooter, Freeman Nooter & Ginsberg, New York, NY.

For Appellee:    Daniel W. Levy (E. Danya Perry, Katherine Polk Failla, *on the brief*), Assistant United States Attorneys for Lev L. Dassin, Acting United States Attorney for the Southern District of New York, New York, NY.

**UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED** that for the reasons stated herein and in the accompanying per curiam opinion, the judgments of the United States District Court for the Southern District of New York are **AFFIRMED**.

Defendants-appellants Nathaniel Alexander, Steven Riddick, and Roberto Montgomery appeal from judgments of conviction entered on January 31, 2008, March 20, 2008, and April 7, 2008, following a jury trial in the Southern District of New York (Karas, *J.*). The defendants were prosecuted for their involvement in a scheme in which stolen, altered or counterfeit checks were deposited into banks or used to purchase luxury cars. Alexander and Riddick were convicted of bank fraud, conspiracy to commit bank fraud, and conspiracy to commit money laundering. Montgomery was convicted of conspiring to transport stolen goods, but was acquitted on the charges of bank fraud, conspiracy to commit bank fraud, and conspiracy to launder money. The district court sentenced Alexander, Riddick and Montgomery principally to prison terms of 46 months, 63 months, and 41 months, respectively. We assume the parties' familiarity with the facts and procedural history of this case.

On appeal, the defendants challenge their convictions and sentencing on numerous grounds and each defendant adopts those arguments of his codefendants that apply to him.

Sufficiency of the Evidence

Alexander argues that the government presented insufficient evidence at trial to prove beyond a reasonable doubt that he was a knowing participant in the bank fraud offenses and the money laundering conspiracy. "A defendant challenging the sufficiency of the evidence bears a heavy burden." *United States v. Pipola,* 83 F.3d 556, 564 (2d Cir. 1996) (citing *Glasser v. United States,* 315 U.S. 60, 80 (1942)). On a sufficiency challenge, "we view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." United States v. Arena, 180 F.3d 380, 391 (2d Cir. 1999) (internal quotation marks omitted). We will sustain the jury's verdict so long as "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

We agree with the district court that there was more than enough evidence presented at trial to support the jury's findings of guilt.

Evidence at trial showed that Alexander had received and deposited counterfeit checks issued by parties with which he had no business or other relationship. Alexander was unable to provide a plausible explanation for his receipt of these checks or explain why, after he deposited the counterfeit checks, he wrote checks to the coconspirators' confederates. Phone records and overnight mail packages connected Alexander to other coconspirators, and cooperating witness Natasha Singh testified that on every occasion in which Douglas Shyne used another individual's

3

pre-existing account to deposit funds, he did so with that individual's explicit agreement so that he didn't "get burned."

Prejudicial Variance and Constructive Amendment

Montgomery asserts prejudicial variance and constructive amendment because the indictment charged him with using one counterfeit check, but the government presented evidence at trial regarding two additional counterfeit checks that Montgomery had given Gene Morales (the proprietor of the Florida automobile dealership).

"'A variance occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment.'" *United States v. Salmonese,* 352 F.3d 608, 621 (2d Cir. 2003) (quoting *United States v. Frank*, 156 F.3d 332, 337 n.5 (2d Cir. 1998)). A constructive amendment of an indictment occurs where "either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." *Id.* at 620 (internal quotations omitted).

Judge Karas rejected Montgomery's argument in denying his Rule 29 motion:

> The evidence about the other checks, which is really the basis for the variance claim, I didn't interpret that as, and I don't think now, looking back on it, either, an improper variance. I think it's a question of using evidence of other bad checks to show Montgomery's intent to use the bad check; here, to buy the car that was at issue. And I don't think that's improper. And the government certainly didn't argue in its summation that the jury should convict Montgomery solely based on those other checks.

> The point was that, in the context of the transaction where Montgomery was directed to go down and get the vehicle, that those checks became relevant to the question of his intent, and I think they certainly are.

4

We agree with the district court's conclusion. "[P]roof at trial need not, indeed cannot, be a precise replica of the charges contained in an indictment," *United States v. Rigas*, 490 F.3d 208, 228 (2d Cir. 2007) (quotation marks omitted), and that fact that additional facts were proven against Montgomery did not establish a variance. Nor was there a constructive amendment, as the "generally framed indictment encompasse[d] the specific legal theory [and] evidence," *Salmonese*, 352 F.3d at 620, used against Montgomery. The evidence that Montgomery passed on two additional counterfeit checks to purchase additional luxury cars was relevant to show that contrary to Montgomery's arguments at trial, he was a knowing participant in the scheme to possess and transport stolen property.

### Venue

Appellants contend that the Southern District of New York was an improper venue. We are not persuaded. The prosecution of Montgomery in the Southern District of New York was proper because the evidence showed that he drove a stolen car from Florida to New York City. Cooperating witness Singh testified that the stolen vehicle was parked at a garage, "[i]n Manhattan." Viewing this testimony in a light most favorable to the government, this testimony alone made venue proper. *See* 18 U.S.C. § 3237(a).

In his brief, Montgomery contests Singh's version of events and credits his own testimony that he parked the car in Brooklyn. The determination as to which testimony to credit was a matter for the jury, and we see no basis for overturning the jury's decision to credit that of Singh. Montgomery suggests in his brief on appeal that he could have driven from Florida to Brooklyn without passing through Manhattan by traveling from New Jersey to Staten Island and then to Brooklyn. Even if Montgomery's hypothesized route had been taken, venue in the

5

Southern District of New York was still proper because the hypothesized route would have included travel on the Verrazano-Narrows Bridge, which spans a body of water that lies within the joint jurisdiction of the Southern and Eastern Districts of New York, *see* 28 U.S.C. § 112(b).

Venue was also proper for the prosecution of Alexander and Riddick on the conspiracy counts and the substantive count of bank fraud. *See United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir 2003) ("[I]n a conspiracy prosecution, venue is proper in any district in which an overt act in furtherance of the conspiracy was committed by any of the coconspirators." (internal quotations omitted)). Singh testified that Shyne, as the mastermind of the conspiracy, conducted parts of the fraudulent check scheme in Manhattan. This included using checks stolen in Manhattan and sending counterfeit checks from Manhattan to coconspirators in other locations.

After depositing a fraudulent check, Alexander issued and signed a check for $60,000 that was made payable to coconspirator Jason Watler. Coconspirator Prince then sent that check to Shyne in New York City. Watler obtained the check from Shyne and deposited it in a bank in Manhattan. Likewise, Riddick received a FedEx package containing a counterfeit check for $375,000 that had been sent from New York.

Phone records introduced at trial also showed that Riddick spoke frequently with Alexander and with members of the conspiracy in New York. Based on these facts, the jury could infer that Alexander and Riddick were aware, or at least reasonably could have foreseen, that the conspiracy involved a New York component. *See id.* ("[V]enue is proper in a district where (1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue."). Further, the receipt of counterfeit checks sent from New York or the deposit

of the proceeds of such checks in New York is sufficient to establish venue on the substantive count of bank fraud. *See United States v. Ramirez-Amaya*, 812 F.2d 813, 816 (2d Cir. 1987) ("Venue is proper in any district in which any part of the crime was committed.").

Cross Examination of Alexander's Character Witness

Alexander seeks a new trial based on the district court's decision to allow the government to ask Alexander's pastor, who testified on Alexander's behalf as a character witness, whether his opinion of Alexander would change if he learned that Alexander had an extramarital affair. "We review evidentiary rulings under a deferential abuse of discretion standard and give district court judges wide latitude in determining whether evidence is admissible at trial." *Meloff v. New York Life Ins. Co.*, 240 F.3d 138, 148 (2d Cir. 2001) (quotation marks omitted). The district court concluded that under Federal Rule of Evidence 403, the probative value of the questions outweighed any danger of unfair prejudice. We find no abuse of discretion in this decision. As the district court correctly found, Alexander opened the door to such questioning when his pastor testified that Alexander "carried himself in a very honorable manner." Further, the district court minimized the risk of prejudice by instructing the jury that whether or not Alexander had an affair should not be considered by them in deciding this case.

Alexander also argues on appeal that the form of the questions about Alexander's purported affair asked by the government on cross examination were improper. As Alexander did not object to the form of the questions at trial, we review for plain error, *see United States v. Johnson*, 529 F.3d 493, 501 (2d Cir. 2008), and we find none.

Alexander also argues that the government lacked a good faith basis for asking questions related to Alexander's alleged affair because the government's source for this information,

7

Marion Jones, was later prosecuted for making false statements to federal agents. The district court did not abuse its discretion in allowing the government to rely on this information as Jones's false statements involved her boyfriend's and her own culpability, and the record does not indicate that she had any reason to lie about Alexander's affair.

### Cross Examination of Alexander's Previous Attorney

Alexander argues that the district court erred by permitting the government to cross-examine his first attorney, Michael Fineman, about whether he had filed a motion to suppress Alexander's proffer session statements and whether he might face a legal malpractice claim based on his representation of Alexander. The district court's decision to allow these questions was not an abuse of discretion. "'[T]he exposure of a witness' motivation in testifying is a proper and important function of . . . cross-examination.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986) (quoting *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974)). The government's questions about Fineman's motion to suppress and his affidavit in support of that motion showed a potential conflict between Fineman's prior actions and his trial testimony that Alexander had not made any incriminating statements during the proffer session. The questions about Fineman facing a potential legal malpractice suit, to which defense counsel did not object, and which we review for plain error, *see Johnson*, 529 F.3d at 501, were relevant as to Fineman's motivation in testifying because Fineman might believe that he could avoid a malpractice lawsuit if Alexander were acquitted. *See Henry v. Speckard*, 22 F.3d 1209, 1214 (2d Cir. 1994) ("The motivation of a witness in testifying, including [his] possible self-interest and any bias . . . is one of the principal subjects for cross-examination.").

## Jury Instructions

Alexander, joined by Riddick and Montgomery, argue that the district court's jury instructions on conscious avoidance were in error because they "permitted the jurors to find that Alexander joined a conspiracy based on a finding of his 'knowingly participating in a joint undertaking' or that he [had] 'knowingly agreed to a joint undertaking,' without requiring proof that Alexander's purpose or intent in doing so was to further the criminal objectives of the conspiracy." As the appellants did not object to the district court's instruction during the trial, we review for plain error. *See United States v. Vasquez*, 267 F.3d 79, 86-87 (2d Cir. 2001). A plain error is an error that is plain and that prejudicially affected the defendant's "substantial rights" and "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (internal quotation marks omitted). Appellants' argument fails because it ignores the district court's instruction that participation in a conspiracy requires a finding of specific intent:

> In deciding whether the defendant that you are considering was in fact a member of the conspiracy, you should consider whether the defendant knowingly and willfully joined the conspiracy. Did he participate in it with its knowledge and unlawful purpose and with the specific intention of furthering his [sic] business or objective as in an associate or worker.

To the extent that the court discussed the theory of conscious avoidance, it took care to note that "there is a difference between knowingly participating in a joint undertaking and knowing the object of that undertaking," and it instructed the jury that the concept "cannot be used as a substitute for a finding that the defendant . . . knowingly agreed to a joint undertaking." We see no error in the court's instructions, much less an error that affected appellants' substantial rights.

9

## The District Court's Denial of Appellants' Rule 33 Motion

"We review a district court's decision to deny a Rule 33 motion seeking a new trial for abuse of discretion." *United States v. Spinelli*, 551 F.3d 159, 164 (2d Cir. 2008)

*Alleged Perjury of a Government Witness*

Appellants seek a new trial based on the alleged perjury of government witness Natasha Singh, who replied "Yes" during cross-examination when she was asked if she had "pled guilty to all of them?"  Before asking this latter question, defense counsel had previously asked, "How many other checks did you—big checks did you participate [in] with Shyne and Toybe?"

Appellants allege that Singh's response was false because she was included as an unindicted coconspirator in the check fraud scheme outlined in the *United States v. Bartee* indictment, to which she never pleaded guilty.  *See United States v. Shyne*, 292 Fed. App'x 123, 125 (2d Cir. 2008) (summary order) ("Singh did not commit perjury at . . . trial. . . . [H]er testimony that she 'pled guilty to all of them' did not constitute perjury.").  In denying appellants' Rule 33 motion for a new trial, the district court found that Singh's response did not amount to perjury.  We agree.  Singh's answer is ambiguous as to whether she meant that she had pleaded guilty to all "checks," or all "big checks."  Further, as the district court properly noted, Singh's guilty plea in the charged conspiracy was so broad that it covered her activity in the *Bartee* indictment.  And even if Singh had committed perjury, appellants are unable to show that the government knew that she was committing perjury or that such perjury was material. *See United States v. Wallach*, 935 F.2d 445, 456 (2d Cir. 1991) ("Where the government was unaware of a witness' perjury, . . .  a new trial is warranted only if the testimony was material and 'the court [is left] with a firm belief that but for the perjured testimony, the defendant would

10

most likely not have been convicted.'" (quoting *Sanders v. Sullivan*, 863 F.2d 218, 226 (2d Cir. 1988))).

*The Government's Failure to Disclose Singh's Involvement in the Bartee case*

Appellants argue that a new trial is required due to the government's failure to disclose the fact that cooperating witness Natasha Singh was also involved in the *Bartee* case as an unindicted coconspirator. "[A] new trial based upon previously-undisclosed evidence is ordinarily not favored and should be granted only with great caution." *United States v. Wong*, 78 F.3d 73, 79 (2d Cir. 1996) (internal quotation marks omitted). This failure-to-disclose contention was likewise made in a co-defendant's appeal and it was rejected. *Shyne*, 292 Fed. App'x at 125. The district court credited the sworn affidavit of the Assistant United States Attorney, who averred that at the time of trial, she had been unaware that Singh had prepared fraudulent invoices that were part of the *Bartee* case. The district court did not abuse its discretion in crediting the government's explanation, and the appellants are unable to point to any part of the trial record that suggests otherwise.[1]

Riddick's Obstruction of Justice Enhancement

Riddick appeals his sentence, arguing that the district court should not have imposed a two-level upward adjustment pursuant to § 3C1.1 because the government lacked "clear and convincing evidence" that the two emails and contract that he provided to the government were

---

[1] We also agree with the district court's observation that,
> [The April 2007] testimony does not indicate that Ms. Singh admits that she told the government that she prepared the invoices [that were part of the *Bartee* case]. The fact that she had knowledge generally about fraudulent activity involving the UR entity is not the same as saying that she told the government that she prepared the two invoices.

fraudulent or that Riddick had acted with a specific intent to obstruct justice. We review a sentencing court's interpretation of the Guidelines *de novo*, and its related findings of fact for clear error. *United States v. Fiore*, 381 F.3d 89, 92 (2d Cir. 2004). The district court's findings that the documents were fraudulent was firmly supported by the evidence presented at trial. In contrast to the contents of the purported emails, Mahmoud Abul testified that he had never sent money to Riddick, that he had never received any email communications from Riddick about the receipt of money, and that he had no agreement for Riddick to train Kuwaiti athletes. Also, the purported emails that the district court determined to be fraudulent lack the header information contained in the actual emails sent between Riddick and Abul. The district court found that these documents "put the government through some hoops" and that the false emails were material because they corroborated Riddick's version of events and "cause[d] the government to have to conduct [an] investigation on the assumption that these documents are real." On these facts, the district court did not err in applying an obstruction of justice enhancement. *See* U.S.S.G. § 3C1.1, cmt. n.4(c) (noting that obstruction of justice under § 3C1.1 includes "producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding"); *United States v. Bonds*, 933 F.2d 152, 155 (2d Cir. 1991) (per curiam) ("Documents . . . are not normally altered or fabricated; thus, alteration of documents is itself evidence of an intent to deceive the court.").

### The Reasonableness of Montgomery's Sentence

Montgomery requests that we remand the case to the district court for resentencing because, he argues, the district court erred by refusing to award a reduction in his sentence due to his "minor role" in the offense. Montgomery also challenges the district court's calculation of

loss amount and its application of an obstruction of justice enhancement. Lastly, Montgomery contends that the sentence was excessive because he will "undoubtedly face" the "harsh collateral consequence of deportation."

"A sentencing court's findings of facts, such as a finding concerning a defendant's role in criminal activity, will not be overturned unless clearly erroneous." *United States v. Abiodun*, 536 F.3d 162, 166 (2d Cir. 2008) (internal quotations omitted). The district court found that Montgomery did not qualify for a minor role reduction because he had performed "important acts" that were necessary to complete the scheme. The conspirators needed to retrieve the luxury car from the Florida automobile dealership promptly before the counterfeit check was discovered and Montgomery filled that role. Montgomery also participated in the purchase of a second set of cars, including signing paperwork and delivering the counterfeit checks used to pay for these cars. The court's finding was well supported by the evidence presented at trial and was not clearly erroneous. *See United States v. Carpenter*, 252 F.3d 230, 234 (2d Cir. 2001) ("[W]e are mindful that a sentencing court's assessment of the defendant's role in criminal activity is highly fact-specific and depends upon the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." (internal quotations omitted)).

We also find no error in the district court's loss calculation, which included the $277,000 counterfeit check plus the value of the three additional luxury cars purchased by Montgomery using the $493,000 in counterfeit checks. *See* U.S.S.G. § 1B1.3(a). The court's calculation was fully supported by the testimony of Gene Morales, which the court evaluated and credited, as it was entitled to do.

13

The district court applied an obstruction of justice enhancement due to Montgomery's false testimony. To support an upward adjustment for obstruction of justice, the district court must point to a defendant's lie made under oath, and "find that the defendant knowingly made a false statement on a material matter." *United States v. Williams*, 79 F.3d 334, 337-38 (2d Cir. 1996). Montgomery lied under oath about his relationships with Shyne and Bennett, telling the jury that he had never spoken with Shyne prior to 2005 and that he had spoken with Bennett only three or four times since his release on bail. Montgomery's lies were revealed when the government introduced Montgomery's phone records for the relevant periods showing numerous calls between Montgomery and Shyne, and over thirty calls between Montgomery and Bennett. As the district court properly noted, "on a scale of zero to ten, [Montgomery's testimony] was a zero in terms of the truthfulness of the answers." The district court's application of the obstruction of justice enhancement was fully supported by the record and did not constitute clear error.

We find nothing unreasonable about Montgomery's sentence and note that the court did not err by declining to award a lesser sentence based on Montgomery's deportation concerns. *See United States v. Restrepo*, 999 F.2d 640, 647 (2d Cir. 1993).

We have considered appellants' remaining arguments and find them to be without merit. For the foregoing reasons and those in an accompanying per curiam opinion, we AFFIRM the judgments of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

14